Good morning. My name is William Honig and I represent Terrence Manuel. I would request three minutes in rebuttal in this matter. That's granted. And if I can, may I begin? The keystone in search and seizure under the Fourth Amendment is a warrant signed by a neutral and detached magistrate. If I may give a special good morning to Judge Alicorn and indicate there's a simple way for the police to avoid many complex search and seizure problems. Get a search warrant. Had they obtained a search warrant in this case, as they could well have, there would have been no motion to suppress, no hearing, no objection to trial, and no thorny issues for us to resolve on appeal. Well, that's always the case, obviously. I mean, you know, if you get a warrant. But here we have, we have a probationer and a reasonable suspicion standard. That was a reasonable suspicion case. That was the first case to use the term, well, not the term, but the actual residence. And it was Judge Alicorn's case. Oh, you were reading from a case. I'm sorry. It was Judge Alicorn's case in United States v. Harper, which began this back in 1991. You know that I'm not bound by that case here. I understand that, but I... That's why we invite him from the Ninth Circuit, because he's... It was very, it was ironic when I saw that, because I really didn't realize that, frankly, till this morning when I was rereading the cases. Can I ask a question? The arrest, the handcuffing at the laundromat, is there an allegation here that the arrest, I mean, he was handcuffed outside the laundromat. Is that being objected to? Was that raised as an unlawful arrest? I do not believe that that was... I did not have the suppression hearing itself. I do not believe that was raised at the suppression hearing. So I have not continued it on appeal. Although I think the reasonable suspicion argument goes to that. I think the stronger argument is this special needs argument. Reasonableness under the Fourth Amendment is a balancing of defendants' reasonable expectation of privacy versus the special needs of the probation system and the particular search regime that was created. What was wrong here? They have a key to... Well, let me back up. They know that his name is on a mailbox that is at an address different from the address given. They know that he is supposed to advise of a change of address, and he has not done so. And they find a key, they have a key, which when they insert it in the lock of the residence, it opens the door, right? A key that came from his possession. His possession, exactly. And he's not saying it was not his. And they have his eyes getting wide. We'll even forget that. How is the search with those facts not pursuant to reasonable suspicion? That there is a violation of probation. The reason it's not is the reasonable suspicion requirement itself is a special needs requirement. The Supreme Court in Griffin and Knights allowed special needs searches of probationers without a warrant and based on less than probable cause, only to the extent the state had passed a statute or regulation lowering the probationer's expectation of privacy. Well, there is one here. There's a Pennsylvania statute. The Pennsylvania statute, as interpreted by Pennsylvania courts, only allow a search without a warrant based upon reasonable suspicion of the probation officer's approved residence. That is the language that has been cited both in Edwards, the Commonwealth case, Harper, wasn't the approved resident, but the actual resident, or the reason to believe, probable cause to believe it was his residence. Scott talked about the approved residence back in 1991, 1998. Shea v. Smith talked about it preceding the statute in 1992. Williams talked about it prior to the statute as what's listed on the parole agreement. But since that time, there's been no effort to change the statute since there was neither. The statute says of any real property in the control of the defendant, and here we have a key. The statute has been determined by Pennsylvania courts, Williams and Edwards. As long ago as Baker, the government acknowledged that Scott and Williams were the controlling cases, and they were both Pennsylvania cases. Whether or not we would choose to interpret a similarly worded federal regulation in that fashion, we are bound by the state court's interpretation. That's what Griffin told us specifically, that we're bound by Pennsylvania's determination. Pennsylvania has, in this case, by its statute, determined two things. The reasonable expectation of privacy it determined to be given its citizens. And that was, you can be searched on its probationers, reasonable expectation of privacy. And also, the special needs it was requesting to be considered by courts as reasonable under the Fourth Amendment. And that has been determined to mean a search of your approved residence upon reasonable suspicion. Now, we can speculate as to their reasoning in that, that they were considering more third parties' rights, if you have an overnight guest. But I also, excuse me. I think Judge Stapleton has a question. I thought you were suggesting that it had been, that the Pennsylvania statute had been construed so that you could not search something that, you could search something if you had probable cause to believe that was the residence of the offender or the probationer. No, you can search the approved residence of the probationer based upon reasonable suspicion only under the statute. Okay. And that has been determined. It's a reasonable statute. It's similar to Griffin. So I would say that that would be upheld. And Edwards, the court said, and it's a quote, it is apparent, you cannot have it applied to an unapproved residence unless, quote, it is apparent to the parole officers the residence being searched is, in fact, the residence of the parolee and not of another person. That was the issue in Edwards, was that you just didn't know the guy was coming and going from someone else's residence. Here we have a key that fits and the name on the mailbox. Doesn't Edwards stand for the proposition that this is, in fact, a reasonable suspicion? Well, if you mean probable cause. Well, probable cause to believe it's residence. But if you have probable cause to believe it's residence, then you can search it on reasonable suspicion. Right. That's what the case is held beginning with Harper. So why wasn't there probable cause to believe that this was a place where he was residing? The information was from an anonymous, untested source. Corroborated by the mailbox. Corroborate, well, partially corroborated by the mailbox. I didn't think that, you know, we were going to get into this part of the argument. But we're here. But the mailbox was not seen, was not noted in the search warrant that was later secured. The officer testified at trial. He didn't see or note anything with name. The probation officer originally said it was Terrence Manuel on it, then later changed his testimony. Well, it was T. Manuel. Presumably, the court found him credible that T. Manuel was on the mailbox. That T. Manuel, ultimately, that T. Manuel was on. But I don't think that in and of itself relates to probable cause. How about the key fitting? The key fitting is the commencement of the search. As indicated, there were three cases that were decided. Lyons, I believe, was the one cited by the government. I think it was Delgado and another case that I cited in my reply brief. But it was clear that the insertion and turning of the key in the lock constituted a search. That was decided in United States v. Concepcion, a Seventh Circuit case. They did, however, say that Alessi's privacy interest in the lock was so small that the officer did not need probable cause to inspect it. The Delgado case, the Lyons case, and the DeBartolomew case were all the insertion of the key in the lock just to determine identity to go and get a warrant. In my mind, the search is commenced by putting the key in the lock. And the government, at least at trial or at discretionary hearing, didn't argue that that was part of their probable cause. The government only argued that they needed only reasonable suspicion and no warrant in order to conduct that search. Griffin and also Knights talk about the reduction of the reasonable expectation of privacy based upon a specific statute or regulation. In Knights, it was actually part of the court order where California actually has a statute allowing searches on less than reasonable suspicion. And that was part of both the Knights and Griffin decision. Those decisions limit what is the normal warrant and probable cause requirements. I don't think that the warrant and probable cause requirements are necessarily separable when it regards a third party residence. There are many reasons that some name can be on a mailbox. You can just be getting mail there. It could have been his girlfriend's house that he just got mail at because there was some testimony that they found clothes and he had made that statement. Later he said- Don't we have to construe the facts in the light most favorable of the prevailing party in this case? Yes. You're telling us- Well, it was just in response to a question. Doesn't that necessarily give probable cause the fact that his name was on the mailbox? It may give reasonable suspicion, but I don't think based upon the lack of any further investigation would rise to a level of probable cause. As you had quoted in Edwards, it was to believe that that was his residence. And they said that was the probable cause standard to believe residency. But I think the stronger argument is the statute and the interpretation by state court to citizens as to what their expectations are. In Knight's, the expectation was at the lowest level. They needed no suspicion, didn't have to be probation officer or police. Knight's had taken away, I believe, the argument of whether there's a difference between if it's truly for probationary needs or investigatory needs. And it took away the stalking horse arguments, all of which may someday be a good argument. But today it's not a compelling argument. But it did that. It told its citizens, this is what you are to expect. And Pennsylvania specifically told its citizens, this is what you are to expect. And that is you can have your approved residence searched without a warrant based on reasonable suspicion only and not based upon anything less than that in a third party other than warrant and probable cause. All right. Thank you. We'll hear from you on rebuttal. Mr. Henson. May it please the Court. I'm Eric Henson. I represent the United States. First, Judge Rendell, your question was the handcuffing challenged either in the district court or before this court. And the answer is no. There was no claim made below. And there's no claim made in the principal brief or the reply brief of the defendant that the handcuffing was a Fourth Amendment violation or that it, if it were, it implicated what happened after the handcuffing. If I could ask you to start off with the concept of reasonable suspicion. Reasonable suspicion of what? What do we have to have reasonable suspicion of? Reasonable suspicion of a parole violation. That wasn't argued below before the district court. Before the district court, it was reasonable suspicion as to the guns and drugs. I believe, Your Honor, that we argued that, and Judge Robreno explicitly finds in his opinion that the reasonable suspicion that was relevant here was with respect to whether or not there had been a probation violation. And that violation was the illegal residence. There was, we would submit reasonable suspicion to believe there were guns and drugs, but that was not the basis on which the probation officers searched. Well, did they really need that? Couldn't they figure that out from what gave them probable cause to believe that that was his residence, namely the mailbox and the fact that the key fit? Yes, Your Honor, but they weren't required at the point that they knew that that was his residence, which he had declared by putting his name on the box. And they found it a month after they first confirmed the tip that he was residing there. They were not obliged to proceed with respect to that violation without collecting evidence. And they chose to collect the evidence in the way that they did because they had information which they credited that he might be armed, he might be dealing in drugs. They didn't want, if he were, that evidence to be destroyed, dispersed, taken elsewhere. And given that they are not armed, they wanted to confront him not at what they knew was his residence, but outside it to prevent any danger to themselves or others with the arrest so that we agree that they had probable cause, although reasonable suspicion of the probation violation was all that was required. They were not required to act on that in a way other than that that they did. The Manuel did not have a right to be proceeded against on the basis of the tip and the mailbox notation. The probation officers had a right based on that reasonable suspicion that they had to go into the residence and determine whether or not by living there he was violating his probation. So they took a lease and they took a PICO bill and a Comcast bill. They did. And after they had confirmed the tip with respect to criminal activity, they turned that matter over to the police who obtained a warrant. Let me ask you, your brother across the way says, look, federal law is relevant here. Of course, the Fourth Amendment, you can't search without a warrant unless you have in order to make it has to be a reasonable search. And if you don't have a warrant, you've got to have something special. And he says the thing that in Griffin was identified was a reasonable state scheme authorizing the search of a probationer on reasonable suspicion. And that as far as once you look at the issue of reasonable scheme, reasonable state scheme is determined by state law and what the state says is its law. And then he says, and the courts of Pennsylvania have determined that you can't that the statute is limited to searches of the actual registered residents. And so it doesn't matter whether they had probable cause or reasonable suspicion. The statute is limited to actual registered residents. I hadn't appreciated that argument before, but is that. I understood the defense to be making that argument, which your honor has articulated quite well and succinctly. We agree with part of that. That is the Griffin decision says we will recognize an exception to the Fourth Amendment with respect to probationers or parolees, provided there is a probation or parole scheme. And what the case does not say that Mr. Honig's argument requires is that should a state include in its probation or parole scheme requirements that go beyond the Fourth Amendment, for example, probable cause, which they could, that that requirement would apply in federal courts where probable cause, where reasonable suspicion is the Fourth Amendment standard. And the question in federal court is whether any federal provision has been violated that would warrant the suppression of the evidence. But following through the argument, so we reject the premise that for Fourth Amendment purposes, a state may take away this privilege of probation officers to search on reasonable suspicion. That's Fourth Amendment law. And that's the law that must be applied in federal court. Nonetheless, in Pennsylvania, we had first, as recognized by this court in U.S. versus Hill, a case not cited in 1992 before the statutes that we rely on now, that the Pennsylvania parole and probation system qualified for this special needs exception to the Fourth Amendment. The statute then that was enacted provides explicitly for reasonable suspicion searches. And the Pennsylvania Supreme Court, before the statute, recognizing that the statute would govern after its pronouncement, in Williams said reasonable suspicion, reasonably related to the probation or parole function, is what is required, which is consonant with the Fourth Amendment. And therefore, Pennsylvania law, we abide by in federal court because it is federal law. And what's the Pennsylvania case you just referred to, Supreme Court case? Williams, which is cited by Mr. Honig, and we also discussed. Mr. Honig contends that because the case concerned a search of an approved residence, the case decided that only an approved residence may be searched on reasonable suspicion. That's just the background of the case, not the holding. The holding was that as under federal law, probation searches proceed under reasonable suspicion. He also reads Edwards to say that. Do you read Edwards to say that, that it's limited to an approved residence? We do not read Edwards to say that. Edwards says if there's reasonable suspicion, you can search. They find on the facts of that case, which are distinguished from ours, and which Judge Robreno distinguished in his opinion, that there was no reasonable suspicion and therefore the search was unlawful. They go on to say in dictum that where the place to be searched is not the residence of the parolee, there's a probable cause standard. The difficulty with that is first, we now have the nub of this case, which is that Mr. Honig relies on dictum in a superior court opinion, which doesn't purport to interpret the Pennsylvania statute, which is clear in not distinguishing approved from other residences. He relies on Edwards as interpreting the statute to require probable cause. That dictum, it seems to me, does not say that Pennsylvania law is contrary to federal law. If Edwards were an interpretation and a binding one rather than dictum with respect to the Pennsylvania statute, we would submit respectfully that the statute then not found in the Fourth Amendment and therefore not enforceable in federal court. We don't have to reach that here because clearly there was reasonable suspicion and the statute permits it. The statute explicitly provides for reasonable suspicion searches of the place of residence. If there's real property under the control of? Correct. But real property is defined as residence. Is defined in the statute. The term is residence. That is correct. And the waiver form, to the extent that this Fourth Amendment exception takes as a factor that the probationer be warned and have consented to the searches, the form, which is at page 20 and 21 of the supplemental appendix, makes it clear that in paragraph 3, it says we're going to inspect, the probation office will inspect my home. I have to give notice if I change my residence and then acknowledges that the department has the authority to search my person, place of residence, or vehicle without a warrant on reasonable suspicion. So that explicitly in the statute, explicitly acknowledged by Manuel and all probationers and parolees is a right under Pennsylvania law, which is not in violation of the Fourth Amendment, to search the place of residence on reasonable suspicion and having a place of residence not identified as such to the probation office is a probation violation. It follows from that necessarily that under Pennsylvania law, as under the Constitution, probation and parole searches, and Griffin identifies the same person, residence, and vehicles. Well, we want to get technical about it. It doesn't really say in the form that prior to having any other residence or place that he went, I mean, maybe he didn't reside here. The evidence really was he went to work from the other place. He hadn't changed his residence, in fact. He had an additional place with his name on the mailbox that he had a key to. You know, we don't know that he actually resided there. So maybe he didn't even change his residence. Well, judgments of reasonable suspicion, just as judgments of probable cause, may be wrong. The possibility that it was not his residence, although he called it that and had a key to it, doesn't negate the reasonable suspicion that the probation officers had that it was. Just as in this case, he can offer evidence, it really didn't count as my residence, the possibility that there may be such evidence before the fact doesn't negate a reasonable suspicion or, as this Court has said in this case, probable cause. Except that if you read the dicta in Edwards as more than dicta, I mean, it says it has to be apparent to the police officers that it is the place where he resides. And I guess the real issue in the case is do you have, where you have T. Manuel on the mailbox and a key, is that apparent that a person actually resides in that location as compared to having a place where they keep their guns and drugs or having a place where they go to meet their friends because their wife or their mother doesn't like their friends? Isn't there at least an issue there as to whether it is so apparent that it is his residence? Because they didn't do any investigation. They had this information for a month. They had the information for a month. And they didn't go to the other place where he resided to see whether he had left, did they? Correct. And their scheme, their decision was that doing those things in the circumstances that they had, one, was not necessary. And two, would jeopardize their purpose of supervision, which was twofold. One, to find out whether he was violating the conditions of his supervision by living in an unapproved residence. And two, the protection of the community that he be disarmed should he have armed himself and be dealing in drugs. So that if the Edwards dictum were the law of Pennsylvania, one, we would have satisfied it here because it is apparent from your name being on there. And they didn't just go in on the basis of that. The name still on there a month later. And the defendant had reacted in the way he did. And there were keys in the defendant's possession that admitted the officers first to the building and later to the apartment. So that were this apparent standard, which is something I take it less than probable cause. They say probable cause. In Edwards, they use the word probable cause. If there were a probable cause standard, there was probable cause. But probable cause is not required, were it required under Pennsylvania law, just as when we have the throwdown cases, the Hodari D cases, which aren't prosecutable in state court. In federal court, they are because there's no Fourth Amendment violation, even though there's a violation of Pennsylvania law. But we don't have to argue that here because I submit, Judge Stapleton, that the Pennsylvania scheme requires reasonable suspicion and permits searches on reasonable suspicion of any residents. And that's exactly what we have here. Okay. Now, just my color blindness. Let me ask you one final question. With, of course, permission. It may be dictum in Edwards, but what we're required to do, as I understand it, is to predict what the Supreme Court of Pennsylvania would say the correct interpretation of this statute is. Yes. Now, you say, well, you shouldn't defer to those distinguished judges on the intermediate appellate court because of what? Because of the Williams case? Well, because of the Williams case, because of the subsequent statute, and because the question here. The statute came after Williams. The statute came after Williams. So we have no Supreme Court authority interpreting the statute. Correct. I thought that. And my interpretation of Williams is that the Williams panel considered itself to be making a constitutional decision, not a decision of statutory interpretation. We would have a different situation, and Baker was my case. If the government were relying on consent only by Manuel, then that's a contract between Manuel and the state of Pennsylvania. And Pennsylvania law would bind with respect to what that contract means. But Pennsylvania law, with respect to what is constitutionally required, would not bind, even if we had a decision which were reasonably predictive of what the Pennsylvania courts would say. And I would submit with respect that the Pennsylvania courts would not adopt that dictum, which would actually encourage probationers to go to authorized residences, because there they would be more protected from intrusion and supervision. But they well might have – the legislature may well have done that out of concern for the privacy rights of third parties. They might have, but they might also have done that knowing that a significant proportion of are not a single-person residence. All right. I think we understand your position. Thank you. Thank you. Thank you. I would specifically ask the court that this is not a decision to be made on whether it would be harder for probationers, or this one would face it – this one would have a better foot up, because he could live in a different residence. Because, in fact, in Edwards, the court took the opposite tact. It said, you know, someone – a police officer or a probation officer could decide, well, he wants to search this place, and therefore he could just wait for this person to go in the place, even with a key. In Edwards, he had a key. Edwards was at the residence. There's never any testimony. And we have a 30-day period here that he was seen at the residence. He was seen near the residence. There was testimony. If they were going to go and arrest him at the laundromat, how hard would it have been for them to park in front of that? We're meeting at 12 o'clock. Let's park there at 1130 and see him leave. I don't see how this rises to probable cause. And, frankly, I don't see how the government can say that it's dicta when the court specifically says, thus it follows logically, that in order for the provisions – and it gives the statute – to apply, to provide a probation officer with authority to make a warrantless entry into a home, it must be apparent to the parole officers the residence being searched is, in fact, the residence. And I'm not sure, in fact – I've argued that it's probable cause. In fact may be more than probable cause. In fact may be, beyond a reasonable doubt, proving it as a fact. And I would say the government also has noted in its – and as Mr. Henson said, it was his case – that the parties, although he was right, they were talking about consent, agree that the Pennsylvania Supreme Court has weighed in both in Williams and in Scott versus Pennsylvania Board of Probation and Parole. Scott is a very unique case because Scott was a civil case – or not a civil case, but went up to the Supreme Court on other issues. But in Scott, a representative of the Pennsylvania Board of Probation and Parole testified that the meaning of that statute is to search the residence listed on the parole agreement. So Pennsylvania knew the decision it was making and has a right to make that decision to decide what its special needs are and especially to advise the probationer what his reasonable expectation of privacy should be. If you tell someone we're not going to search anything other than your listed residence without a warrant in probable cause, that's defining for your citizen what – under your statutory search regime – what they are entitled to. And I believe that, the State in defining what the statute means, is their prerogative and why Griffin said we had to follow that.  MS. GOTTLIEB. Thank you. Thank you, counsel. The case is well argued. We'll take it under advisement and ask the clerk to recess court. MR.